

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DALLAS

FILED

JAN 1 5 2004

CLERK, U.S. DISTRICT COURT
By _____
Deputy

MICHAEL MARGOLIES, and            §
THE MARGOLIES FAMILY TRUST,       §
                                  §
            Plaintiffs,           §
                                  §
v.                                §    CIVIL ACTION NO. 03-CV0572-P
                                  §    3:03CV572P
DARWIN DEASON,                    §
DOUGLAS R. DEASON, and            §
DAVID L. NEELY,                   §
                    Defendants.   §

## DEFENDANTS DARWIN DEASON'S AND DOUGLAS R. DEASON'S ORIGINAL ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT, COUNTERCLAIM, AND JURY DEMAND

COME NOW, Defendants Darwin Deason and Douglas R. Deason (hereinafter referred to as the "Deasons"), by and through the undersigned counsel, and file and serve this Defendants Darwin Deason's and Douglas R. Deason's Original Answer to Plaintiff's First Amended Complaint, Counterclaim, and Jury Demand ("Complaint") and, in support thereof, shows the Court the following.

### THE PARTIES

1.     The Deasons are without information or knowledge sufficient to admit or deny Plaintiffs' Michael Margolies and the Margolies Family Trust ("Plaintiffs") allegations contained in ¶ 1 of Plaintiff's First Amended Complaint, Counterclaim, and Jury Demand ("Complaint")

2.     The Deasons are without information or knowledge sufficient to admit or deny Plaintiffs' allegations contained in ¶ 2 of the Complaint.

3.     The Deasons admit that Darwin Deason is a Texas resident and resides at 8181 Douglas Avenue, Dallas, Texas. The Deasons deny all other allegations contained in ¶ 3 of the Complaint.

4.      The Deasons admit that Douglas R. Deason is a Texas resident in Dallas, Texas. The Deasons deny all other allegations contained in ¶ 4 of the Complaint.

5.      The Deasons admit the allegations contained in ¶ 5 of the Complaint.

6.      Paragraph 6 of the Complaint does not require an admission or denial, but the Deasons will abide by the term designations as referred to in this paragraph.

7.      ACS admits the allegations contained in ¶ 7 of the Complaint.  However, the Deasons do not believe that Plaintiffs have the ability to bring any party into this lawsuit as a "nominal" party.

## JURISDICTION AND VENUE

8.      Although the Deasons reserve the objections contained in the Deasons Motions to Dismiss, as well as the reply to the Plaintiffs' response to said motions, and to the extent that the Deasons are required to do so, the Deasons admit that the Plaintiffs assert the claims contained in ¶ 8 of the Complaint.

9.      The Deasons admit the allegations contained in ¶ 9 of the Complaint.

10.     The Deasons admit the allegations contained in ¶ 10 of the Complaint.

11.     The Deasons deny that any wrongful acts occurred within this District.  The Deasons admit all other all other allegations contained in ¶ 11 of the Complaint.

## FACTS COMMON TO ALL CAUSES OF ACTION

12.     The Deasons admit the allegations contained in ¶ 12 of the Complaint.

13.     The Deasons are without information or knowledge sufficient to admit or deny Plaintiffs' allegations contained in ¶ 13 of the Complaint.

14.     The Deasons admit the allegations contained in ¶ 14 of the Complaint.

15.    The Deasons admit that Precept Business Services, Inc. ("Precept") had a principal place of business at 1909 Woodall Rogers Freeway, Dallas, Texas 75201. The Deasons deny all other allegations contained in ¶ 15 of the Complaint.

16.    The Deasons admit the allegations contained in ¶ 16 of the Complaint.

17.    The Deasons admit the allegations contained in ¶ 17 of the Complaint.

18.    The Deasons admit that on or about March 18, 1998, Precept acquired the assets of USTS pursuant to an agreement with USTS and assumed certain liabilities of USTS and that Precept applied for and obtained a NASDAQ listing. The Deasons deny the remainder of the allegations contained in ¶ 18 of the Complaint.

19.    The Deasons are without information or knowledge sufficient to admit or deny Plaintiffs' allegations contained in ¶ 19 of the Complaint.

20.    The Deasons are without information or knowledge sufficient to admit or deny Plaintiffs' allegations contained in ¶ 20 of the Complaint.

21.    The Deasons admit that Precept, rather the Defendants, named Margolies to Precept's Board as Vice-Chairman. The Deasons admit all other allegations contained in ¶ 21 of the Complaint.

22.    The Deasons admit the existence of a settlement agreement as described in ¶ 22 of the Complaint. The Deasons are without information or knowledge sufficient to admit or deny the remainder of Plaintiffs' allegations contained in ¶ 22 of the Complaint.

23.    The Deasons admit that Margolies filed suit which culminated in a second settlement. The Deasons deny all other allegations contained in ¶ 23 of the Complaint.

24.     The Deasons deny that Defendants perpetrated securities violations and fraud as alleged in the Complaint.  The Deasons are without information or knowledge sufficient to admit or deny the remainder of Plaintiffs' allegations contained in ¶ 24 of the Complaint.

25.     The Deasons admit that the Bankruptcy Complaint named Darwin Deason, Douglas R. Deason, and David Neely as Defendants and said Complaint contained multiple causes of action against Darwin Deason, Douglas R. Deason, and David Neely.  The Deasons deny all other allegations contained in ¶ 25 of the Complaint.

26.     The Deasons deny the allegations contained in ¶ 26 of the Complaint.

## THE SECURITIES VIOLATIONS
## BY PRECEPT AND ITS CONTROL PERSONS

27.     The Deasons admit that Precept periodically filed with the Securities and Exchange Commission ("SEC") periodic reports concerning the financial and business condition of Precept by use of the United States mails and by means and instrumentality of interstate commerce.  The Deasons deny all other allegations contained in ¶ 27 of the Complaint.

28.     The Deasons admit that Douglas Deason and David Neely participated in preparation and filing of the S-4A registration statement. The Deasons deny all other allegations contained in ¶ 28 of the Complaint.

29.     The Deasons deny the allegations contained in ¶ 29 of the Complaint.

30.     The Deasons deny the allegations contained in ¶ 30 of the Complaint.

31.     The Deasons deny making any false statements or omissions at the time of the Acquisition and further deny that Plaintiffs have been damaged by their actions as alleged in this lawsuit.  The Deasons are without information or knowledge sufficient to admit or deny the remainder of the allegations contained in ¶ 31 of the Complaint.

A.    **THE BELLS, TEXAS RANCH**

32.    The Deasons admit that they, on numerous occasions, in the S-4A and in other filings, disclosed the sale of the Bells, Texas ranch and various details thereof.  The Deasons are without information or knowledge sufficient to admit or deny the remainder of the allegations contained in ¶ 32 of the Complaint.

33.    The Deasons admit that they, on numerous occasions, in the S-4A and in other filings, disclosed the sale of the Bells, Texas ranch and various details thereof, including a lease back by Precept.  The Deasons are without information or knowledge sufficient to admit or deny the remainder of the allegations contained in ¶ 33 of the Complaint.

34.    The Deasons admit that the quoted statement in ¶ 34 of the Complaint appeared in the definitive agreement for the acquisition between USTS and Precept, which was an exhibit to the S-4A.  The Deasons deny all other allegations contained in ¶ 34 of the Complaint.

B.    **THE DALLAS PENTHOUSE CONDO AT 8181 DOUGLAS AVENUE SOLD AT A DEEP DISCOUNT TO DARWIN**

35.    The Deasons admit the allegations contained in ¶ 35 of the Complaint.

36.    The Deasons admit that in multiple locations, the S-4A discloses a lease by Darwin Deason of a portion of a building and certain terms thereof.  The Deasons are without information or knowledge sufficient to admit or deny the remainder of the allegations contained in ¶ 36 of the Complaint.

37.    The Deasons are without information or knowledge sufficient to admit or deny the allegations contained in ¶ 37 of the Complaint.

38.    The Deasons admit that S-4A discloses an extension of a rent-free tenancy.  The Deasons are without information or knowledge sufficient to admit or deny the remainder of the allegations contained in ¶ 38 of the Complaint.

39.    The Deasons admit that Darwin Deason had personal use of a residential penthouse condominium for a period of three years.    The Deasons deny all other allegations contained in ¶ 39 of the Complaint.

40.    The Deasons admit that, as disclosed in the S-4A, work was conducted on the building.    The Deasons are without information or knowledge sufficient to admit or deny the remainder of the allegations contained in ¶ 40 of the Complaint.

41.    The Deasons admit that Darwin Deason purchased the penthouse referenced in ¶ 41 and a portion of another condominium in the building on or about February 26, 1998, for One Million Six Hundred Thousand Dollars, as is disclosed in the S-4A.    The Deasons deny all other allegations contained in ¶ 41 of the Complaint.

42.    The Deasons are without information or knowledge sufficient to admit or deny the allegations contained in ¶ 42 of the Complaint.

43.    The Deasons deny the allegations contained in ¶ 43 of the Complaint.

44.    The Deasons admit that Darwin Deason purchased the penthouse referenced in ¶ 41 and a portion of another condominium in the building on or about February 26, 1998, for One Million Six Hundred Thousand Dollars as is disclosed in the S-4A.    The Deasons deny all other allegations contained in ¶ 44 of the Complaint.

45.    The Deasons deny the allegations contained in ¶ 45 of the Complaint.

46.    The Deasons admit that Precept conducted its business only in the ordinary course of business.    The Deasons deny all other allegations contained in ¶ 46 of the Complaint.

C.    **THE LONE STAR PARK LUXURY SKYBOX**

47.    The Deasons admit that S-4A discloses in multiple locations the ownership by Precept Holdings of a limited partnership interest in Lone Star Jockey Club. The Deasons deny all other allegations contained in ¶ 47 of the Complaint.

48.    The Deasons admit that S-4A discloses in multiple locations the proposed sale by Precept and subsequent lease back of its interest in a luxury box at Lone Star Park. The Deasons deny all other allegations contained in ¶ 48 of the Complaint.

49.    The Deasons deny the allegations contained in ¶ 49 of the Complaint.

D.    **THE PALM DESERT PROPERTY**

50.    The Deasons admit that the S-4A discloses in multiple locations a proposed sale to Darwin Deason of real estate located in Palm Desert, California, as well as an interest in a restaurant. The Deasons deny all other allegations contained in ¶ 50 of the Complaint.

51.    The Deasons are without information or knowledge sufficient to admit or deny the allegations contained in ¶ 51 of the Complaint.

52.    The Deasons are without information or knowledge sufficient to admit or deny the allegations contained in ¶ 52 of the Complaint.

53.    The Deasons are without information or knowledge sufficient to admit or deny the allegations contained in ¶ 53 of the Complaint.

54.    The Deasons are without information or knowledge sufficient to admit or deny the allegations contained in ¶ 53 of the Complaint.

55.    The Deasons deny the allegations contained in ¶ 55 of the Complaint.

E.   **PRECEPT BUILDERS**

56.    The Deasons admit that the S-4A discloses in multiple locations that Darwin Deason acquired approximately 98% of Precept Builders and that Precept decreased its interest, as well as the corresponding details thereof.  The Deasons deny all other allegations contained in ¶ 56 of the Complaint.

57.    The Deasons deny the allegation in ¶ 57 of any sham transaction.  The Deasons are without information or knowledge sufficient to admit or deny the remainder of the allegations contained in ¶ 57 of the Complaint.

58.    The Deasons are without information or knowledge sufficient to admit or deny Plaintiffs' allegations contained in ¶ 58 of the Complaint.

59.    The Deasons deny the allegation in ¶ 59 of any sham transaction. The Deasons are without information or knowledge sufficient to admit or deny the remainder of Plaintiffs' allegations contained in ¶ 59 of the Complaint.

60.    The Deasons deny the allegation in ¶ 60 of any sham transaction. The Deasons are without information or knowledge sufficient to admit or deny the remainder of Plaintiffs' allegations contained in ¶ 60 of the Complaint.

61.    The Deasons deny the allegations contained in ¶ 61 of the Complaint.

F.   **DEFENDANTS' PERSONAL EXPENSES**

62.    The Deasons deny the allegations contained in ¶ 62 of the Complaint.

63.    The Deasons admit that they caused to be disclosed to Margolies all material details regarding Precept's continuing businesses.   The Deasons deny all other allegations contained in ¶ 63 of the Complaint.

64.    The Deasons admit that they caused to be disclosed to Margolies all material details regarding Precept's continuing businesses.    The Deasons deny all other allegations contained in ¶ 64 of the Complaint.

65.    The Deasons are without information or knowledge sufficient to admit or deny Plaintiffs' allegations contained in ¶ 65 of the Complaint.

66.    The Deasons are without information or knowledge sufficient to admit or deny Plaintiffs' allegations contained in ¶ 66 of the Complaint.

67.    The Deasons deny the allegations contained in ¶ 67 of the Complaint.

68.    The Deasons deny the allegations as to the amount of money paid for the items listed in ¶ 68 of the Complaint as well as the dates of such purchases and the claim that such payments were for no corporate purpose.    The Deasons admit all other allegations contained in ¶ 68 of the Complaint.

69.    The Deasons deny the allegations contained in ¶ 69 of the Complaint.

70.    The Deasons are without information or knowledge sufficient to admit or deny Plaintiffs' allegations contained in ¶ 70 of the Complaint.

71.    The Deasons are without information or knowledge sufficient to admit or deny Plaintiffs' allegations contained in ¶ 70 of the Complaint.

72.    The Deasons admit that Precept initially paid for certain recurring or extraordinary expenses which may have included expenses such as those described in ¶ 72 of the Complaint, but are without knowledge as to specific types or amounts of expenses that were reimbursed by Affiliated Computer Services, Inc. ("ACS").    The Deasons deny all other allegations contained in ¶ 72 of the Complaint.

73.    The Deasons admit that Precept initially paid for certain expenses such as those described in ¶ 73 of the Complaint, but have no knowledge as to specific types and amounts. Said expenses were later reimbursed by another company. The Deasons deny all other allegations contained in ¶ 73 of the Complaint.

74.    The Deasons deny the allegations contained in ¶ 74 that they tried to hide some of their personal expenses by charging them to Precept Builders. The Deasons are without information or knowledge sufficient to admit or deny the remainder of the allegations contained in ¶ 74 of the Complaint.

75.    The Deasons deny the allegations contained in ¶ 75 of the Complaint.

76.    The Deasons deny the allegations contained in ¶ 76 of the Complaint.

**G.    THE INFOGRAPHIX AND MBF/MAILSOURCE FRAUD**

77.    The Deasons deny the allegations contained in ¶ 77 of the Complaint.

78.    The Deasons admit that, although specific potential acquisitions contemplated were not disclosed, the S-4A and other documents provided to Plaintiffs disclosed in multiple locations its intent to expand rapidly as well as its program of acquisitions. The Deasons deny all other allegations contained in ¶ 78 of the Complaint.

79.    The Deasons are without information or knowledge sufficient to admit or deny Plaintiffs' allegations contained in ¶ 79 with respect to the closing date or the date on which Margolies was informed of the transaction. The Deasons admit that Margolies was a Vice-Chairman of the Precept Board. The Deasons deny all other allegations contained in ¶ 79 of the Complaint.

80.    The Deasons are without information or knowledge sufficient to admit or deny the allegations contained in ¶ 80 of the Complaint.

81.    The Deasons admit a proposal existed to purchase Infographix using Precept common stock.  The Deasons are without information or knowledge sufficient to admit or deny the remainder of the allegations contained in ¶ 81 of the Complaint.

82.    The Deasons admit a proposal existed to purchase Infographix using Precept common stock.  The Deasons are without information or knowledge sufficient to admit or deny the remainder of the allegations contained in ¶ 82 of the Complaint.

83.    The Deasons admit that Precept closed on the USTS Acquisition on or about March 19, 1998.  The Deasons deny all other allegations contained in ¶ 83 of the Complaint.

84.    The Deasons are without information or knowledge sufficient to admit or deny the allegations contained in ¶ 84 of the Complaint.

85.    The Deasons are without information or knowledge sufficient to admit or deny the allegations contained in ¶ 85 of the Complaint regarding the timing of Margolies' Board appointment.  The Deasons deny all other the allegations contained in ¶ 85 of the Complaint.

86.    The Deasons are without information or knowledge sufficient to admit or deny Plaintiffs' allegations contained in ¶ 86 of the Complaint.

87.    The Deasons admit that Douglas Deason participated in the MBF-Mailsource acquisition.  The Deasons are without information or knowledge sufficient to admit or deny the remainder of the allegations contained in ¶ 87 of the Complaint.

88.    The Deasons deny the allegations contained in ¶ 88 of the Complaint.

### DEFENDANTS AS CONTROL PERSONS

89.    The Deasons admit that Defendants held corporate positions of authority.  The Deasons deny all other allegations contained in ¶ 89 of the Complaint.

90.    The Deasons deny the allegations contained in ¶ 90 of the Complaint.

91.    The Deasons admit the allegations contained in ¶ 91 of the Complaint with the exception of the fact that Darwin Deason was an officer of Precept.

92.    The Deasons admit that Douglas Deason, David Neely, and Margolies, in his capacity as chairman and CEO of USTS, were involved in drafting, producing, reviewing, and/or disseminating information described in the Form S-4A. The Deasons deny all other allegations contained in ¶ 92 of the Complaint.

93.    The Deasons admit that Douglas Deason was an officer of Precept. The Deasons deny that Darwin Deason was an Officer of Precept. Darwin Deason was a board member only. The Deasons are without information or knowledge sufficient to admit or deny the remainder of the allegations contained in ¶ 93 of the Complaint.

94.    The Deasons deny the allegations contained in ¶ 94 of the Complaint.

95.    The Deasons deny the allegations contained in ¶ 95 of the Complaint.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS
### ("§15 Of The Securities Act")

96.    The Deasons repeat and reallege each and every response set forth in ¶ 1-95 above as if more fully set forth at length herein.

97.    The Deasons deny the allegations contained in ¶ 97 of the Complaint.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS
### ("§20 Of The Exchange Act")

98.    The Deasons repeat and reallege each and every response set forth in ¶ 1-97 above as if more fully set forth at length herein.

99.    The Deasons deny the allegations contained in ¶ 99 of the Complaint.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS
### ("Texas Blue Sky Law Article 581-33 (A) (2)")

100.    The Deasons repeat and reallege each and every response set forth in ¶ 1-99 above as if more fully set forth at length herein.

101.    The Deasons deny the allegations contained in ¶ 101 of the Complaint.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANTS
### ("Texas Blue Sky Law Article 581-33 (F)")

102.    The Deasons repeat and reallege each and every response set forth in ¶ 1-101 above as if more fully set forth at length herein.

103.    The Deasons deny the allegations contained in ¶ 103 of the Complaint.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANTS
### ("Common Law Fraud")

104.    The Deasons repeat and reallege each and every response set forth in ¶ 1-103 above as if more fully set forth at length herein.

105.    The Deasons deny the allegations contained in ¶ 105 of the Complaint.

106.    The Deasons deny the allegations contained in ¶ 106 of the Complaint.

107.    The Deasons deny that the Plaintiffs' are entitled to recover damages as alleged in the Prayer of the Complaint.

## DEFENDANTS' AFFIRMATIVE DEFENSES

### First Defense

108.    Plaintiff's Complaint, and each count thereof, fails to state a claim upon which relief can be granted.

### Third Defense

109.    Plaintiffs claims are barred in whole or in part by the equitable defenses of estoppel, laches, waiver and *pari delicto*.

## Fourth Defense

110.    The several claims stated in the several counts of the Complaint did not, nor did any of them, accrue within four (4) years next before the commencement of the suit, and the action is barred by the statute of limitations.

## Fifth Defense

111.    Each and every fact as to supposed omission or misstatements alleged in the Complaint, to the extent they occurred, if at all, was discovered and actually known by Plaintiffs on or before March 18, 1999. This action was commenced on or about March 18, 2003 and not within one (1) year from the time when Plaintiffs' had actual knowledge of the facts upon which their alleged claim depends.

## Sixth Defense

112.    Complaint fails to affirmatively plead the applicable statute of limitations, and therefore fails to state claims for which relief may be granted.

## Seventh Defense

113.    At all times relevant hereto, Plaintiffs' individually or through their authorized representatives, had a duty do inquire as to all facts relevant to the transaction in question, including, to the extent they occurred at all, the facts alleged in the Complaint. Plaintiff Michael Margolies was a sophisticated businessman with substantial experience in corporate and securities matters. Over a period of more than one year, he was given access to all documents in the possession of Precept Business Systems, Inc. or of the Defendants which might have been relevant to the transaction contemplated. Plaintiff Michael Margolies also had the opportunity to question not only the Deason Defendants but all officers, directors, and employees of Precept. He was therefore placed upon a duty of inquiry as to any relevant details not actually disclosed to

him and had a fiduciary duty *inter alia* to the shareholders of United States Transportation Services ("USTS") to determine with due diligence the material facts affecting the proposed transactions. The Deason Defendants were entitled to rely and did rely upon Michael Margolies duty, individually and on behalf of the Margolies Family Trust and the other USTS shareholders, to make such inquiries. To the extent that Michael Margolies failed to determine relevant facts, if any, as alleged in the First Amended Complaint, he failed to exercise due diligence and thereby breached the fiduciary duty owed to his own shareholders in negotiating and consummating the merger of the two companies.

### Eighth Defense

114.    In the alternative, and without waiving any of the above, these Defendants would show that any misrepresentation or omission they may have made was done accidentally and was not done knowingly, intentionally, with an intent to defraud, or with reckless disregard for the truth or falsity of the statement.

### Ninth Defense

115.    Plaintiffs are not the real parties in interest or lack standing to bring some or all of the claims alleged.

### Tenth Defense

116.    Defendant substantially complied with all securities registration requirements; any departures from any provision of the securities laws were innocent, minor, de minimus, and inconsequential, and should not give rise to liability.

### Eleventh Defense

117.    Plaintiffs' claims are barred by their authorization and ratification of the acts of Defendant.

### Twelfth Defense

118.    Plaintiffs' alleged damages are barred or reduced by their failure to mitigate and by the doctrine of avoidable consequences.

### Thirteenth Defense

119.    Plaintiffs' assumed the risk of any and all of the losses complained of.

### Fourteenth Defense

120.    Plaintiffs' claims, if any, were caused or contributed to by their own fault or conduct, or by the acts of others over whom Defendants had no control and for whom Defendant were not responsible.

### Fifteenth Defense

121.    All the matters raised in the present action were matters which, if true, could and should have been raised in previous litigation between the parties, to wit:

1. An arbitration proceeding which took place in 1999 before the American Arbitration Association captioned In the Matter of Arbitration between Michael Margolies against Precept Business Services, Inc., Arbitration number 51-145-00660-99;

2. A proceeding in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, Styled *Steven Turoff, et al., Plaintiff v. Darwin Deason, et al., Defendants*, Cause No. 02-3583.

In the Bankruptcy Court Adversary Proceeding, Michael Margolies, David Neely, Darwin Deason, and Douglas Deason were party Defendants.  The subject of that Adversary Proceeding included most, if not all, of the substantive allegations of fact contained in the Amended Complaint.  Indeed, Plaintiffs cite the filing of the Complaint in the Adversary action as the source of their knowledge of the facts leading to the present suit.  Therefore, all these matters should have been raised in the Arbitration and/or in the Adversary case, and the

resolution of Arbitration and the Adversary case renders these claims *res judicata* or subject to collateral estoppel as between these parties.

### Sixteenth Defense

122.    The Deason Defendants will show that they were released by Plaintiff Michael Margolies from all claims and causes of action, known and unknown in connection with the resolution of the Arbitration proceeding referred to in ¶ 120 above by a Compromise and Permanent Release and Settlement Agreement dated December 23, 1999.

### Seventeenth Defense

123.    The Deasons did not make any misrepresentation of the material fact or by omission failed to supply any material facts necessary to make true those representations which were made.  Some or all of the facts alleged by the Plaintiffs to have been misrepresented or concealed were in fact available to the Plaintiff through public sources of information.

### Eighteenth Defense

124.    The Deason Defendants acted in good faith and made reasonable professional judgment in connection with the issues that arose as to the appropriate facts to disclose.

### Nineteenth Defense

125.    Some or all of the alleged misstatements or omissions related to matters of factual detail which the Deason Defendants were under no duty to disclose.  The Plaintiffs did not rely on any alleged misrepresentation or misimpression caused by any of the asserted omissions in their decision to consummate the transaction.  Even if any such material misrepresentation or omission had occurred, the correction or disclosure of same would not have altered the Plaintiffs' decision to consummate the merger transaction.

### Twentieth Defense

126.    The Deason Defendants will show that, in the alternative, *arguendo*, if any of the facts alleged by the Plaintiffs are true concerning any misstatement or omission, then the truth as to those facts or circumstances were readily available to the Plaintiff Michael Margolies as a result of his status as an employee and board member of Precept Business Services, Inc. after the closing of the merger.    His conduct in participating in board meetings, approving financial statements, and otherwise, operated to ratify the transactions, including the disclosures made to him individually and as representative of the Margolies Family Trust.

### Twenty-First Defense

127.    The Deason Defendants would further show that the Plaintiffs are not entitled to recover because they come to this Court with unclean hands due to their own misconduct in connection with the merger transaction in question, as set forth more specifically hereafter.

### Twenty-Second Defense

128.    The Deason Defendants would further show that the Plaintiffs suffered no damages by the transaction in question in that the properties and securities transferred by them to Precept were worth substantially less than the consideration received by them from Precept and that, had they not closed the transaction in question the Plaintiffs stock in USTS, by their own admission, would have been essentially worthless.

### COUNTERCLAIM BY DARWIN DEASON AND DOUGLAS R. DEASON

COME NOW Darwin Deason and Douglas Deason (collectively "The Deasons") and assert this their Original Counterclaim against Counter-Defendant Michael Margolies ("Margolies"), in the alternative, and without waiving any of their above contentions that the claims of Margolies and the Margolies Family Trust should be dismissed with prejudice:

# I.
## PARTIES, JURISDICTION AND VENUE

129.    Defendant Darwin Deason is an individual residing in Dallas, Texas and is a citizen of the State of Texas.

130.    Defendant Douglas R. Deason is an individual residing in Dallas, Texas and is a citizen of the State of Texas.

131.    Michael Margolies ("Margolies"), Counter-defendant, is a citizen of the State of New York, subject to service of process through his attorney in present action, James P. Jalil, Shustak, Jalil & Heller, 545 Madison Avenue, New York, New York 10022.

132.    The claims asserted in this counter-claim are compulsory counter-claims to Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure, Rule 13(a), and the Court therefore has subject matter jurisdiction over the claims set forth under the Doctrine of Ancillary Jurisdiction.

133.    Venue for this counter-claim lies in the Northern District of Texas because the transactions giving rise to the Deason Defendants' counter-claim occurred in part in Dallas, Texas, and Dallas, Texas is the principle place of business of the Deason Defendants.

# II.
## COUNT ONE
### Violations of the Federal Securities Act

134.    During the period from approximately March 7, 1997 through March 18, 1999, Margolies was the President of USTS, Inc. and was the principle actor on behalf of USTS in its dealings with Precept Business Services, Inc. ("Precept") in negotiations for the merger between the two companies.  During this period, Mr. Margolies made numerous statements, verbally and in writing to the Deasons and/or other representatives of Precept, and/or omitted to state certain material facts necessary to an understanding of those which were made concerning the business

history and present circumstances of USTS as of the time of the proposed merger. Certain of these statements were either known by Margolies to be false, incomplete, or deceptive or should have been known to be such in the exercise of reasonable care, and therefore were made knowingly, intentionally, or recklessly and without regard to their truth or falsity. Such representations concerned matters such as the ownership by USTS of certain assets, the nature and amount of debt to be assumed by Precept as part of the merger and other facts relevant to the present and future earnings potential of the businesses to be acquired by Precept through the merger.

135.    In particular, Margolies misstated or omitted to disclose that certain of the assets, particularly buses purportedly owned by USTS, directly or through one of its transportation subsidiaries, were either not owned to all, did not exist, or were not properly documented.

136.    Margolies further misstated or omitted to disclose the fact that certain of the buses, supposedly in the hands of third-parties pursuant to vehicle leases where he did not subject to such leases or that no effort was being made to collect on buses and/or leases as they appeared on the balance sheet were not in fact valid or collectable by USTS or by Precept after the Acquisition.

137.    Margolies also represented to the Deason Defendants, directly or through third-parties that USTS owned certain truck/trailer rigs utilized in the long haul trucking business. In fact, such trucks/trailers do not exist or were not owned in clear title by USTS.

138.    Although the Deasons learned certain facts concerning these vehicles, and missing title documents prior to the closing of the merger, they were assured by Margolies that it would "not be a problem" and that the necessary documentation would be made available. In fact, no such documentation was ever produced.

139.    Margolies further misrepresented to Deason, directly or through their agents, the status of certain persons claimed to be payroll employees of USTS.  In fact, such certain persons, although maintained on the payroll on USTS were actually engaged not in the business of that company but were performing services on private property owned by Michael Margolies at his residence near West Point, New York.

140.    At all times relevant hereto, the Deasons were significant shareholders of Precept. As a result of the transaction, brought about in reliance upon the statements and omissions of Margolies, the Deasons agreed to a restructuring of their ownership in the newly merged company which included the issuance of additional Precept stock to them, but resulted in an overall dilution of their relative ownership and control of the Precept businesses as they existed prior to the effective date of the merger.  In particular, the Deason's Precept stock as issued in connection with the merger related to a different business and caused Precept to be transformed from what it had previously been, a privately held, largely "family" business, to an entity which was now publicly traded subject to the requirements of the National Association of Securities Dealers Listing which previously identified shares in USTS.

141.    As a result of the foregoing dilution and change in the nature of the business, and the increased obligation and liabilities assumed by Precept, the Deasons, and each of them, were individually damaged in an amount in excess of Ten Million Dollars ($10,000,000.00).  All the acts of Margolies in connection with these transactions as described in this counter-claim were in violation of the Securities Act of 1933, and in particular § 10 and Rule 10b-5 promulgated by the Securities and Exchange Commission.

### III.
### COUNT TWO
### Texas Securities Act

142.   The Deasons as counter-plaintiffs reassert and incorporate herein by reference all allegations of fact and law set forth in the foregoing Original Answer and Counter-Claim, to the same effect as if set forth at length in this count.

143.   All the acts of counter-defendant Michael Margolies were done knowingly, intentionally, and/or recklessly with the purpose and intent to induce the Deasons to enter into the merger with USTS.  As a result thereof, Margolies violated Article 581-33 of the Texas Securities Act (Vernon Texas Statutes 581-1 – 581-33) and is therefore liable for the Deasons damages proximately caused thereby.

### IV.
### COUNT THREE
### Common Law Fraud

144.   Deasons, as counter-plaintiffs, hereby reassert all allegations of fact and law made in the preceding paragraphs 1-134 to the same as if set forth at length in this count.

145.   The foregoing actions by Defendant Michael Margolies constituted knowing, intentional, and/or reckless misstatements of existing material facts or omissions to state facts necessary to make those statements made true and meaningful, and were intended to induce the Deasons to consent, as shareholders, to consent to the merger agreement between Precept and USTS.  The Deasons did in fact rely upon the statements and omissions to their detriment in consenting to the merger and the dilution and change in the nature of their investment in Precept. As a result, the Deasons each suffered actual damages in the amount of at least Ten Million Dollars ($10,000,000.00).

146.   In that Margolies' actions were done willfully, knowingly, maliciously, and/or recklessly with the intent to deceive the Deasons, the Deasons are further entitled to recover of

and from Margolies punitive and exemplary damages in an amount to be determined by the trier of fact.

## V.
## COUNT THREE
### Contribution

147.     Due to the conduct of Michael Margolies in bringing about the transactions of which he complains in this action, in the event the Court determines that the Deason Defendants owe any sum of money to the Margolies Family Trust or any other persons or parties who may be joined as Plaintiffs in the action, then, and in that event, the Deason Defendants are entitled to recover and hereby request payment from Michael Margolies by way of contribution and indemnity for any sum of money or other damages for which they may be liable.

## VI.
## COUNT FOUR
### Attorney's Fees

148.     As a result of the above and foregoing conduct of Michael Margolies, the Deasons have been required to retain the services of the law firm of Sumner, Schick & Hamilton and of Lanny E. Perkins, attorneys licensed to practice law in the State of Texas.  The Deasons have also agreed to pay said attorneys a reasonable fee for their services in connection herewith.  The Deasons are therefore entitled to recover from Michael Margolies a sum equal to reasonable attorney's fees for the prosecution of this counter-claim, including the preparation, trial, and any necessary appeal herein.

Respectfully Submitted,

**SUMNER, SCHICK & HAMILTON**

By: _____
Steve Sumner
Texas State Bar No. 19508500
Rebecca Hamilton
Texas State Bar No. 08837050
Jerrod L. Davis
Texas State Bar No. 00798133
3838 Oak Lawn Avenue, Suite 400
Dallas, Texas 75219
     Tel.:    214/965-9229
     Fax:    214/965-9215

And

Lanny E. Perkins
Texas Bar No. 15787800
3838 Oak Lawn Avenue, Suite 400
Dallas, Texas 75219
     Tel.:    214/965-9229
     Fax:    214/965-9215

**COUNSEL FOR DEFENDANTS,
DARWIN DEASON AND
DOUGLAS R. DEASON**

## CERTIFICATE OF SERVICE

    I certify that a true and correct copy of the foregoing Darwin Deason's and Douglas R. Deason's Original Answer to Plaintiff's First Amended Complaint and Jury Demand was served upon all counsel of record on the ___15th___ day of January, 2004.

_____
Lanny Perkins