IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JUN 2 0 2005

CLERK, U.S. DISTRICT COURT
By
Deputy

| | | |
|---|---|---|
| MICHAEL MARGOLIES and | § | |
| THE MARGOLIES FAMILY TRUST, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CASE NO.: 3:03-CV-0572-P |
| | § | |
| DARWIN DEASON, DOUGLAS R. | § | |
| DEASON and DAVID L. NEELY, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court is Defendants Darwin Deason, Douglas R. Deason, and David L.

Neely's (collectively "Defendants") Motion for Summary Judgment, filed January 14, 2005.[1]

After considering the parties' arguments and briefing, and the applicable law, the Court

GRANTS Defendants' Motion for Summary Judgment.

I.      **Background and Procedural History**

Plaintiff Michael Margolies ("Margolies") is the former Chief Executive Officer and

majority shareholder of U.S. Transportation Systems, Inc. ("USTS"). (First Am. Compl. ¶ 12.)

Plaintiff The Margolies Family Trust was also a shareholder of USTS. *Id.* ¶ 13.  Defendant

Darwin Deason is a former director and shareholder of Precept Business Services, Inc.

("Precept"). *Id.* ¶¶ 15, 19.  Defendant Douglas R. Deason ("Doug Deason") is Darwin Deason's

---

[1] Defendants Darwin Deason and Douglas R. Deason initially filed their Motion for Summary Judgment on Jaunuary 14, 2005, and David L. Neely filed a Joinder in Motion for Summary Judgment on April 15, 2005. Plaintiffs Michael Margolies and The Margolies Family Trust (collectively "Plaintiffs") filed their Response on March 4, 2005, and Defendants filed their Reply on March 17, 2005.

son, and the former President, Chief Operating Officer and Director of Precept. *Id.* ¶ ¶ 14, 16.

Defendant David L. Neely ("Neely") is the former Chief Executive Officer and Chairman of the

Board of Directors of Precept. Securities and Exchange Commission ("SEC") Form S-4 ("S-4")

(Defs.' App. Supp. Mot. Summ. J. ("Defs.' App.") at 243.)

On November 16, 1997, USTS transferred its business and virtually all of its assets to a

wholly-owned subsidiary of Precept in exchange for 9,612,500 shares of Precept Class A

common stock. SEC Form 423(b)(3) Prospectus ("Prospectus") (Defs.' App. at 256-57.)

Pursuant to the parties agreement, the Precept Class A stock given to USTS was to be distributed

to USTS shareholders, and USTS subsequently liquidated. *Id.* (Defs.' App. at 260-61.) In order

to register the stock for public trading, Precept filed an S-4 with the SEC on December 19, 1997.

S-4 (Defs.' App. at 150.) On February 9, 1998, Precept amended the registration statement by

filing an SEC Form S-4A ("S-4A") (Defs.' App. at 212.) Shortly after, on February 17, 1998,

Precept filed a Prospectus with the SEC. Prospectus (Defs.' App. at 252.) The transaction

closed upon approval of the USTS shareholders and Plaintiffs received their shares of the Precept

Class A Common Stock on March 19, 1998. (First Am. Compl. ¶ ¶ 18-20.)

On March 17, 2003, Plaintiffs filed this lawsuit, alleging that Defendants had included

untrue statements of material fact and omitted necessary material facts on the S-4A filed on

February 9, 1998. *Id.* ¶ 28. Specifically, Plaintiffs allege that Defendants misrepresented and/or

omitted material facts by:

    1.    omitting to state that a sale and lease-back of a ranch property owned by Precept
            ("the Ranch") to an entity owned by Defendants had no legitimate business
            purpose;

2.      regarding the sale and lease-back of a condominium ("the Condo"):

      a.      omitting to state that Darwin Deason agreed to buy back the Condo at the end of its lease term at a discount of $600,000;

      b.      omitting to disclose negotiations or a proposed sale of the Condo to Darwin Deason;

      c.      misrepresenting the proposed sale price as the fair market value of the Condo;

      d.      omitting to state that the transaction had no legitimate business purpose;

      e.      omitting to state the sale of a second condo unit in the same building to Darwin Deason for below market value;

3.      regarding the sale and lease-back of a luxury box at Lone Star Park ("the Luxury Box"):

      a.      misrepresenting the sale price as the fair market value of the Luxury Box;

      b.      omitting to state that the transaction had no legitimate business purpose;

4.      regarding the sale of Defendants' real property in Palm Desert, California ("the Palm Desert property"):

      a.      misrepresenting the proposed sale price as the fair market value of the Palm Desert property;

      b.      omitting to state that the Precept had not collected rent due on the Palm Desert property;

      c.      omitting to state that Precept had paid non-business expenses related to the Palm Desert property;

      d.      omitting to disclose that Doug Deason waived $19,000 in past rent due on the Palm Desert property;

      e.      omitting to state that Doug Deason offset the remaining rent due on the Palm Desert property against $21,000 in personal expenses related to the Palm Desert property;

5.    regarding the private placement of stock in Precept Builders, a subsidiary of
      Precept wholly owned by Darwin Deason ("Precept Builders"):

      a.    omitting to disclose that the private placement of stock was below the
            market value of the stock;

      b.    omitting to disclose that Darwin Deason was the sole person to whom the
            private placement was offered;

      c.    omitting to disclose that the transaction was a sham transaction;

6.    omitting to disclose the acquisition of Infographix, Inc. by Precept;

7.    omitting to disclose the acquisition of MBF/ Mailsource Corp. by Precept;

8.    omitting to disclose that Precept paid certain personal expenses for Defendants;

(Defs.' Br. Supp. Mot. Summ. J. ("Defs.' Br.") at 3-4; Pls.' Br. Resp. Mot. Summ. J. ("Pls.' Br.")

at 4-10.)

Plaintiffs claim they had no knowledge of the alleged false statements and omissions at

the time of the acquisition of USTS, and discovered Defendants' fraudulent conduct in

November 2002 when Plaintiffs received notice of an involuntary bankruptcy complaint filed

against Precept in February 2001. (First Am. Comp. ¶ 24.) The bankruptcy proceeding

eventually evolved into a Chapter 7 liquidation, and the Precept stock previously given to the

USTS shareholders became worthless. *Id.* ¶ 26. Plaintiffs assert that if they had been aware of

the allegedly false and omitted statements at the time Precept acquired USTS, they would not

have accepted the Precept Class A Common Stock as consideration for the acquisition. *Id.* ¶ 31.

Plaintiffs allege that Defendants' conduct violates Section 11 and Section 12(a)(2) of the

Securities Act of 1933 ("the Securities Act"), Section 10(b) of the Securities Exchange Act of

1934 ("the Exchange Act"), Rule 10b-5, promulgated under the Exchange Act, Articles 581-

33(A) and 581-33(F) of the Blue Sky Laws of the State of Texas ("Texas Blue Sky Laws"), and that Defendants' conduct constitutes common law fraud. *Id.* ¶ 29. Plaintiffs assert that Darwin Deason, Doug Deason and Neely are jointly and severally liable under Section 15 of the Securities Act and Section 20 of the Exchange Act for the damages caused by the securities violations. *Id.* ¶ ¶ 30-31.

Defendants now move for summary judgment on all issues under Federal Rule of Civil Procedure 56. Defendants first argue that Plaintiffs' claims under the Securities Act and the Exchange Act are barred by the applicable statute of limitations found in Section 13 of the Securities Act. (Defs.' Br. at 11.) Plaintiffs claim that Section 804 of the Public Company Accounting Reform and Investor Protection Act of 2002 (commonly known as "Sarbanes-Oxley") applies to their claims under the Securities Act and Exchange Act and extends the statute of limitations, making their claims timely filed. (Pls.' Br. at 15.)

Defendants counter that Plaintiffs' claims under the Securities Act and the Exchange Act are time-barred as a matter of law because Sarbanes-Oxley cannot revive a claim that was already time-barred when Sarbanes-Oxley was enacted. (Defs.' Br. at 14-18.) Defendants further argue that Sarbanes-Oxley does not apply to Plaintiffs' claims under the Securities Act because the claims do not require a showing of fraud, deceit, manipulation, or contrivance. *Id.* at 13-14.

Additionally, Defendants assert that Plaintiffs' claims pursuant to the Texas Blue Sky Laws and common law fraud are time-barred under the applicable statutes of limitations. *Id.* at 19-23. Plaintiffs again proffer that they did not discover Defendants' allegedly inculpatory actions until November 2002, making their filing in March of 2003 timely. (Pls.' Br. at 21-25.)

II.     **Summary Judgment Standard**

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial, and of identifying those portions of the record that demonstrate such an absence. *Celotex*, 477 U.S. at 323.

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a material fact issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The party defending against the motion for summary judgment cannot defeat the motion unless she provides specific facts that show the case presents a genuine issue of material fact, such that a reasonable jury might return a verdict in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *Id.* at 248-50; *Abbott v. Equity Group*, 2 F.3d 613, 619 (5th Cir. 1993). In other words, conclusory statements, speculation and unsubstantiated assertions will not suffice to defeat a motion for summary judgment. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). If the nonmoving party fails to make a showing

sufficient to establish the existence of an element essential to her case, and on which she bears

the burden of proof at trail, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

Finally, the Court has no duty to search the record for triable issues. *Ragas v. Tennessee*

*Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "The party opposing summary judgment is

required to identify specific evidence in the record and to articulate the precise manner in which

the evidence supports his or her claim." *Id.* A party may not rely upon "unsubstantiated

assertions" as competent summary judgment evidence. *Id.*

The Court first considers whether Plaintiffs' claims pursuant to the Securities Act and the

Exchange Act are time-barred as a matter of law.

**II.      Statute of Limitations for Securities Act and Exchange Act Claims**

Defendants proffer that Section 13 of the Securities Act governs the statute of limitations

for all claims brought under the Securities Act and Exchange Act. (Defs.' Br. at 11, 18.) Section

13 of the Securities Act states that an action under Section 11 or Section 12(a)(2) of the

Securities Act must be brought, "within one year after the discovery of the untrue statement or

the omission, or after such discovery should have been made by the exercise of reasonable

diligence." 15 U.S.C. § 77m (2005). For Section 11 claims, a claim must be brought within three

years after the security was bona fide offered to the public. *Id.* For Section 12(a)(2) claims, a

claim must be brought within three years after the sale of the security. *Id.* Additionally, the

Supreme Court held in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350

(1991), that actions brought pursuant to Section 10(b) of the Exchange Act and Rule 10b-5 are

governed by the same statute of limitations found in Section 13 of the Securities Act, and must

be brought "within one year after the discovery of the facts constituting the violation and within three years after such violation." *Gilbertson*, 501 U.S. at 364. These three-year time limits are absolute and not subject to equitable tolling. *Summer v. Land & Leisure, Inc.*, 664 F.2d 965, 968 (5th Cir. 1981).

Plaintiffs counter that Section 804 of the Sarbanes-Oxley Act of 2002 ("Section 804") governs their claims under the Securities Act and the Exchange Act. (Pls.' Br. at 15.) Section 804 states the statute of limitations for civil claims pursuant to an Act of Congress. 28 U.S.C. § 1658 (2005). Section 804 provides in relevant part that

> a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 . . . may be brought not later than the earlier of–
>
> > (1) 2 years after the discovery of the facts constituting the violation; or
> >
> > (2) 5 years after such violation.

*Id.* § 1658(b). The term 'securities laws' includes the Securities Act of 1933 and the Securities Exchange Act of 1934. 15 U.S.C. 78c(a)(47). Furthermore, Sarbanes-Oxley states in regard to Section 804 that the limitations period "shall apply to all proceedings addressed by this section *that are commenced on or after the date of enactment of this Act*." Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745 (2002) (emphasis added).

## A.    Retroactivity of Sarbanes-Oxley

### 1.    Legal Standard

The first issue before the court is whether Section 804 applies retroactively to revive

claims that would have been time-barred under the previous statute of limitations at the time

Section 804 was enacted.  When construing a statute to determine retroactivity, courts first turn

to the plain language of the statute.  *Dreher v. United States*, 115 F.3d 330, 332 (5th Cir. 1997).

Unless Congress directs otherwise, "[i]f the language of a provision is sufficiently clear in its

context and not at odds with the legislative history, it is unnecessary to examine the additional

considerations of policy that may have influenced the lawmakers in their formulation of the

statute." Id.

The Fifth Circuit determines the retroactivity of a statute by applying the two-prong test

set out in *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994).  *See, e.g. United States v.*

*Orozco*, 103 F.3d 389 (5th Cir. 1996) (applying the *Landgraf* retroactivity test to Section 2255 of

the Antiterrorism and Effective Death Penalty Act of 1996); *Rutland v. Moore*, 54 F.3d 226 (5th

Cir. 1995) (applying the *Landgraf* retroactivity test to Section 321 of the Civil Rights Act of

1991).  Under *Landgraf*, courts must first determine whether "Congress has expressly prescribed

the statute's proper reach." *Id.*  If so, the Court simply applies the statute as directed by Congress

with no further inquiry. *Id.*  If Congress has not definitively decided retroactivity, the Court

evaluates whether a statute would have retroactive effect; that is, whether "it would impair rights

a party possessed when he acted, increase a party's liability for past conduct, or impose new

duties with respect to transactions already completed." *Id.*  If the statute is determined to have

retroactive effect, the court should apply the general presumption that a statute is not applied

retroactively absent express contrary intent by Congress. *Id.*

Since the enactment of Sarbanes-Oxley in 2002, several courts have evaluated the

retroactivity of Section 804 and reached varying conclusions. *Compare In re Enterprise Mortgage Acceptance Co., LLC Secs. Litig.*, 391 F.3d 401, 411 (2d Cir. 2004) (holding that Section 804 does not apply retroactively to claims time-barred prior to the statute's enactment), *and Foss v. Bear, Stearns & Co.*, 394 F.3d 540, 542 (7th Cir. 2005) (same), *with Tello v. Dean Witter Reynolds, Inc.*, No. 03-12545, 2005 U.S. App. LEXIS 9977, at *14-20, 33-34 (11th Cir. June 1, 2005) (holding that Section 804 is not silent as to its retroactive effect, but does not apply to revive previously time-barred claims *if* the plaintiff had inquiry notice prior to the enactment of Sarbanes-Oxley), *and In re Sawtek Sec. Litig.*, No. 6:03-cv-294-Orl-31DA, 2003 U.S. Dist. LEXIS 25757, at *10 (M.D. Fla. Dec. 19, 2003) (holding that Congress intended Section 804 to retroactively apply to any action commenced after the enactment of Sarbanes-Oxley, regardless of when the underlying events giving rise to the action occurred). However, the Fifth Circuit has not yet decided this issue.

The Second Circuit, and subsequently the Seventh Circuit, held that Section 804 is not retroactive to revive claims that were time-barred prior to the enactment of Sarbanes-Oxley. In *Enterprise*, the Second Circuit consolidated several securities fraud actions in which plaintiffs initiated their actions prior to the passage of Sarbanes-Oxley, but then sought to assert additional securities fraud claims and join new defendants after the passage of Sarbanes-Oxley. *Enterprise*, 391 F.3d at 403-04. The additional claims plaintiffs sought to assert were already time-barred under the limitations law in effect prior to the 2002 enactment of Sarbanes-Oxley. *Id.* at 404.

The Second Circuit first evaluated the plain language of Section 804 under the *Landgraf* test to determine whether Congress expressly provided for retroactivity. *Id.* at 405-06. The court

focused on the language in Section 804 that makes the statute applicable to "all proceedings addressed by this section *that are commenced on or after the date of enactment of this Act*." Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745 (2002). The plaintiffs in *Enterprise* argued that this language was an express retroactivity provision indicating application of Section 804 to any claim filed after the enactment of Sarbanes-Oxley, regardless of when the actions giving rise to the lawsuit occurred. *Enterprise*, 391 F.3d at 406. The court concluded that although the provision could be read as an indication of retroactivity, the language Congress chose did not "unambiguously revive previously stale securities fraud claims." *Id*. at 406.

The court reasoned that Section 804 "contains none of the unambiguous language that the Supreme court has asserted would amount to an express retroactivity command." *Id*. at 407. When deciding whether Congress has expressly provided for retroactivity in a statute, the Supreme Court has determined that the language "all proceedings *pending on* or commenced after the date of enactment" amounts to "an explicit retroactivity command." *Id*. (citing *Landgraf*, 511 U.S. at 255-56 & n.8).[2] Because Section 804 expressly applies to all proceedings "commenced on or after the date of enactment" rather than all proceedings "*pending on* or commenced after the date of enactment," the Second Circuit found that the plain language of the statute did not unambiguously revive previously stale claims. *Id*. at 406-07.

The Second Circuit also noted that Section 804 states "[n]othing in this section shall

---

[2] The Supreme Court has found an express retroactivity provision in other cases employing almost identical language. *See, e.g., Martin v. Hadix*, 527 U.S. 343, 354 (1999) (stating that the language "'provisions shall apply to all proceedings *pending on* or commenced after the date of enactment'" unambiguously indicated retroactive application) (emphasis added) (citation omitted); *Lindh v. Murphy*, 522 U.S. 320, 329 n.4 (1997) (recognizing that the language "'*pending on* or commenced after the date of enactment'" discussed in *Landgraf* could qualify as an express indication of retroactive application) (emphasis added) (citation omitted).

create a new private right of action," *id.* at 407.  Retroactively applying Section 804 and allowing

plaintiffs to now bring a suit that had no basis of law under the old statute of limitations would,

in a way, create a new cause of action.  *Id.*  Thus, this provision can be read to indicate no

retroactive application.  *Id.*  Because the court found no clear retroactive indication in the plain

language of the statute, they turned to the legislative history of the statute for retroactive guidance

from Congress.

The court examined remarks made by Senator Patrick Leahy when he introduced the bill

in March 2002 and found that "[n]othing in the Senate Committee Report . . . indicates that the

extension of the statute of limitations was intended to revive expired claims or that Congress was

even considering such a thing." *Id.* at 408.  Furthermore, the court noted that some of Senator

Leahy's comments regarding the retroactive application of Section 804 can be viewed as directly

conflicting, and at any rate, are in no way dispositive of retroactivity.  *Id.*

Because the court determined that Congress did not expressly provide for retroactivity,

they then evaluated whether the statute would have retroactive effect.  *Id.*  The court found that

Section 804 would have an "impermissible retroactive effect" because increasing the period of

time in which a defendant can be sued increases their liability for past conduct.  *Id.* at 410.  Thus,

the Second Circuit applied the presumption against retroactive application and held that Section

804 cannot be retroactively applied to revive previously time-barred claims.  *Id.*  The Seventh

Circuit affirmed this holding in its entirety with no further analysis.  *See Foss*, 394 F.3d at 542.

Additionally, the Southern District of Texas has held that Section 804 is not retroactive because

Congress did not clearly intend for it to be retroactive, and likewise invoked the presumption

against retroactive application. *In re Enron Corp. Secs., Derivative & "ERISA" Litig.*, No. H-01-3624, 2004 U.S. Dist. LEXIS 8158, at *58-73 (S.D. Tex. Feb. 24, 2004).

However, the Eleventh Circuit recently determined that Section 804 clearly addresses retroactivity. In *Tello*, the plaintiff sought to apply the statute of limitations set out in Section 804 to bring a claim alleging securities fraud violations committed almost five years prior to the filing date. *Tello*, 2005 U.S. App. LEXIS 9977, at *1-2. The Eleventh Circuit also applied the *Landgraf* test and began by evaluating the plain language of the statute. *Id.* at *9-20. The Eleventh Circuit determined that Congress specifically provided for retroactive application of Section 804 by stating that it, "shall apply to all proceedings addressed by this section *that are commenced on or after the date of enactment of this Act . . . .*" *Id.* at *8 (quoting Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745 (2002) (emphasis added). The Eleventh Circuit supports this conclusion by citing *Landgraf*, in which the Supreme Court held that the statute in that case was not retroactive, but had Congress intended it to be retroactive, they would have surely used language comparable to "[this statute] shall apply to all proceedings *pending on* or commenced after the date of enactment of this Act." *Tello*, 2005 U.S. App. LEXIS 9977, at *17-19 (citing *Landgraf*, 511 U.S. at 259-60 (citation omitted) (emphasis added)).[3] Because the

---

[3] The Eleventh Circuit cited the following Supreme Court cases that use such language and reasoning: "*INS v. St. Cyr*, 533 U.S. 289, 318-319 (2001) (collecting examples of unambiguous temporal statutory language providing that the statute applies to actions filed "on or after" the date of enactment, which includes violative conduct that occurred prior to the effective date of the statute); *Martin v. Hadix*, 527 U.S. 343, 354 (1999) (stating that "'new provisions shall apply to all proceedings pending on or commenced after the date of enactment,' referenced in *Landgraf*, unambiguously addresses the temporal reach of the statute." (citation omitted)); *Lindh v. Murphy*, 522 U.S. 320, 329 n.4 (1997) (recognizing from *Landgraf* that statutory language such as, "'[This Act] shall apply to all proceedings pending on or commenced after the date of enactment of this Act,' might possibly have qualified as a clear statement for retroactive effect." (quoting *Landgraf*, 511 U.S. at 260)); *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 307-08 (1994) (noting that the subject statute omitted a provision in the bill that the amendment "'shall apply to all proceedings pending on or commenced after' a fixed

Supreme Court has stated that using this language indicates express retroactive application, and Section 804 uses comparable language, the Eleventh Circuit held that Section 804 is retroactive according to the plain language of the statute. *See id.*

However, the court did not decide whether Section 804 revives all previously time-barred claims. *Id.* at *51-52. Instead, it remanded the case to the district court to determine when the plaintiff was placed on inquiry notice. *Id.* at *51. The court determined that if plaintiffs were on inquiry notice before the effective date of Sarbanes-Oxley, the previous statute of limitations found in Section 13 of the Securities Act would apply. *Id.* at *56. However, if the plaintiffs were not on inquiry notice until after the enactment of Sarbanes-Oxley, the court did not specifically hold whether Section 804 retroactively applies to revive these claims. *Id.* at *51-52. The court reasoned that Sarbanes-Oxley was specifically added by Congress "to expand the period for unknowing victims of fraudulent conduct violative of the securities laws to seek recourse and remedies in federal court," and allowing plaintiffs time to discover such fraud by starting the running of the statute of limitations at the point in time when a plaintiff is on inquiry notice comports with this purpose. *Id.* at *28-29. Thus, the court implied that Section 804 of Sarbanes-Oxley may be retroactive as to those claims in which the plaintiff was put on inquiry notice only after the enactment of Sarbanes-Oxley, but is not applicable to revive claims in which the plaintiff was put on notice before the enactment of Sarbanes-Oxley. *Id.* at *33-34.

---

date and describing the bill as containing 'express retroactivity provisions.'") (citation omitted)." *Tello*, 2005 U.S. App. LEXIS 9977, at *18-19.

### 2.    Discussion

This Court finds the reasoning employed by the Second and Seventh Circuits and the

Southern District of Texas persuasive and holds that Section 804 is not retroactive to revive stale

claims time-barred prior to the enactment of Sarbanes-Oxley in 2002.

The plain language of Section 804 says that it is applicable to any action commenced on

or after the enactment of Section 804 in 2002. *See* Sarbanes-Oxley Act of 2002, Pub. L. No.

107-204, 116 Stat. 745 (2002). As the Second Circuit noted, the Supreme Court has held that

statutes applying to actions *pending on* or commenced after the date of enactment are expressly

intended to be retroactive by Congress. *See Enterprise*, 391 F.3d at 407. The language used in

Section 804, although comparable to statutory language expressly indicating retroactivity, does

not specifically address how to treat claims pending at the time of enactment or claims previously

time-barred at the date of enactment, and does not employ the same language the Supreme Court

has deemed to unambiguously indicate retroactive application.

Because Section 804 fails to expressly include claims pending or previously time-barred

on the date of enactment, the statute could be read as inapplicable to such claims. In contrast,

because the language states that it applies to all claims commenced on or after enactment of

Sarbanes-Oxley, it could be read to include any claim filed at any time after enactment,

regardless of when the conduct giving rise to the claim occurred. Moreover, retroactive

application could in a sense create a new cause of action for a plaintiff whose claims were

previously time-barred, which undermines the statutory language that this section was not in any

way intended to create a "new, private right of action." Sarbanes-Oxley Act of 2002, Pub. L. No.

107-204, 116 Stat. 745 (2002). The Court finds that the plain language of Section 804 is subject to more than one interpretation regarding retroactivity, and hence does not reflect clear Congressional intent for retroactive application. The Court now turns to the statute's legislative history to determine whether Congress clearly intended retroactivity.

As the Second Circuit notes, the legislative history surrounding the enactment of Section 804 is unclear as to whether Congress intended Section 804 to apply retroactively. The court in *Enterprise*, as well as the court in *Enron*, noted that depending upon the reading of the Congressional Record surrounding the bill, one could find statements that indicate retroactive application of Section 804, and statements that point against retroactive application. *See Enterprise*, 391 F.3d at 408; *Enron*, 2004 U.S. Dist. LEXIS 8158, at *54. Thus, Congress did not expressly indicate the temporal reach of Section 804 through either the plain language or the legislative history. Under *Langraf*, the Court next evaluates whether Section 804 would have an impermissible retroactive effect.

Again, the Court adopts the reasoning of the Second Circuit and holds that retroactive application of Section 804 would have an impermissible retroactive effect by imposing additional liability upon a defendant for past conduct. Retroactive application would cause a defendant who, prior to the enactment of Sarbanes-Oxley in 2002, was no longer subject to the fear of litigation for certain past conduct to again be weary of potential claims. Such revival of stale claims undermines the overall purpose of a statute of limitations. *See Landgraf*, 511 U.S. at 265. Thus, as dictated by *Landgraf*, this Court applies the general presumption against retroactivity and holds that Section 804 is not retroactive to revive claims that would have been barred prior to

the enactment of Sarbanes-Oxley, and the Section 13 statute of limitations applies to claims

brought under the Securities Act and the Exchange Act.[4]

Under Section 13, there is an absolute statute of limitations of three years from the time

the securities in question were offered to the public for Section 11 claims, or sold to the plaintiff

for Section 12 claims.  It is undisputed that the Plaintiffs acquired the Precept Class A stock on

March 19, 1998.  Thus, regardless of when Plaintiffs discovered or should have discovered the

facts giving rise to their claims under the Securities Act and the Exchange Act, Plaintiffs had to

file these claims by March 19, 2001, at the very latest under the absolute three-year time-bar.

Plaintiffs filed their claims on March 17, 2003, approximately two years after the statute of

limitations had run, making their claims time-barred as a matter of law.

Therefore, the Court GRANTS summary judgment as to the claims filed pursuant to the

Securities Act and the Exchange Act.

Because the Court concludes that Plaintiffs' claims under the Securities Act are time-

barred under Section 13 of the Securities Act, the Court does not address whether Plaintiffs'

claims involve fraud, deceit, manipulation, or contrivance as required to apply Section 804.

III.    **Statute of Limitations for Texas Blue Sky Laws**

A claim cannot be brought under Texas Blue Sky Laws Article 581-33(A)(1) or 581-

---

[4] The Court notes that had they adopted the reasoning of the Eleventh Circuit in *Enterprise*, Plaintiffs' claims under the Securities Act and the Exchange Act would have still been time-barred as a matter of law.  The Eleventh Circuit, as discussed above, hinged the retroactivity of Section 804 on whether Plaintiffs were on inquiry notice prior to the enactment of Sarbanes-Oxley.  The Court finds later in this opinion that Plaintiffs were on inquiry notice as of February 1998, and therefore Section 804 would not have applied retroactively to these claims.  Thus, under either Section 13 or Section 804, Plaintiffs' claims under the Securities Act and the Exchange Act are time-barred as a matter of law.

33(F): "(a) more than three years after discovery of the untruth or omission, or after discovery should have been made by the exercise of reasonable diligence; or (b) more than five years after the sale." Tex. Rev. Civ. Stat. Ann. art. 581-33(H) (Vernon 2005).

It is undisputed that Plaintiffs filed these claims within five years of the sale of stock on March 19, 1998. Therefore, the issue turns on whether Plaintiffs were placed on inquiry notice and thus subject to the three-year statute of limitations.

### A.    Inquiry Notice

#### 1.    Legal Standard

Inquiry notice is defined as the point when "plaintiff has actual knowledge of the facts giving rise to his claims or has notice of facts that in the exercise of reasonable diligence should have led to such knowledge." *Newby*, 2004 U.S. Dist. LEXIS 8158, at *35. The Fifth Circuit has determined that "[a] plaintiff who has learned of facts which would cause a reasonable person to inquire further must proceed with a reasonable and diligent investigation, and is charged with knowledge of all facts such an investigation would have disclosed." *Jensen v. Snellings*, 841 F.2d 600, 607 (5th Cir. 1988). At the point when a plaintiff has knowledge of such facts, a securities fraud action accrues and the statute of limitations begins to run. *Id.*

In regard to securities fraud, circumstances that create a duty of inquiry for a plaintiff are referred to as "storm warnings." *Tello*, 2005 U.S. App. LEXIS 9977, at *22. An investor that has such storm warnings, but fails to investigate to determine whether securities fraud has occurred, will have such knowledge imputed to him as being on inquiry notice, regardless of whether the investor had actual notice of the fraud. *Id.* at *23-24. Investors are not free to ignore "storm

warnings" which would alert a reasonable investor to the possibility of fraudulent statements or omissions in his securities transactions. *Jensen*, 841 F.2d at 607.

Courts are not settled on what constitutes a "storm warning," but some courts have held that disclosures in the media, a sudden drop in stock price, an SEC investigation, a bankruptcy filing, and warnings in the prospectus can constitute a "storm warning." *Pirelli Armstrong Tire Corp. Retiree Med. Bens. Trust v. Dynegy, Inc.*, 339 F. Supp. 2d 804, 846 (S.D. Tex. 2004). Storm warnings must do more than just raise a suspicion; they must be sufficient enough to incite the investor to investigate and they must relate directly to the misrepresentations and omissions later alleged by the plaintiff. *Id.* Warning signs may not be sufficient to place plaintiff on inquiry notice if they are accompanied by words of comfort from the manager. *Id.* at 850.

Additionally, in securities fraud cases, the act of concealment by a defendant is not enough to relieve plaintiff from their duty to exercise reasonable diligence to discover fraud. *Jensen*, 841 F.2d at 607. Concealment by the defendant is merely a factor to consider when determining if the plaintiff acted with reasonable diligence. *Id.*

## 2.    Discussion

According to Margolies, Defendants reassured him that the Ranch, the Condo, the Luxury Box, and Precept Builders, collectively referred to by both Plaintiffs and Defendants as "the Toys," would be sold either prior to or shortly after the acquisition of USTS at fair market value with the proceeds going to Precept. Margolies Dep. at 105-107, 117-120 (Pls.' App. Resp. Mot. Summ. J. ("Pls.' App.") at 64, 67.) However, the parties did not condition the merger on the disposition of the Toys, and Margolies went forward with the merger without knowledge of

whether the Toys had been sold prior to the acquisition. *Id.* at 105, 119 (Pls.' App. at 64, 67.) Margolies now alleges the disclosures, or lack thereof, regarding the sale of the Toys amounted to misrepresentations and omissions in violation of the Texas Blue Sky Laws referenced above. Plaintiffs also claim, as noted above, that Defendants conducted two major acquisitions and compensated themselves for personal expenses using Precept funds without Plaintiffs consent or knowledge of such actions. (Pls.' Br. at 7-10.)

Plaintiffs claim that they were not put on inquiry notice of this alleged fraud until in or about November 2002 when they received notice of the bankruptcy action against Precept by the U.S. Trustee, which alleged self-dealing and fraud against Defendants. (Pls.' Br. at 3.) Plaintiffs state that although certain facts were disclosed by Defendants regarding the transactions in question, the omissions and misrepresentations by Defendants ultimately led to Precept's bankruptcy and devaluation of Plaintiffs' Precept stock. *Id.* at 4-7. Plaintiffs claim that in light of many reassurances by Defendants that they were proceeding according to the parties' agreement, they went forward with the acquisition and had no knowledge of the facts that gave rise to their claims at the time the alleged violations occurred. *Id.*

Whether a plaintiff was on inquiry notice is a question of fact often appropriate for a jury. *Tello*, 2005 U.S. App. LEXIS 9977, at *24. However, the Court must make an initial determination of whether Plaintiffs have presented competent summary judgment evidence to create a genuine issue of material fact as to when Plaintiffs were put on inquiry notice. *See Matsushita*, 475 U.S. at 586.

Plaintiffs support their allegations mainly by the testimony of Margolies (Margolies Dep.

at 44-63, 92-191 (Pls.' App. at 48-53, 60-85)), communications regarding the parties' pre-merger

conduct agreement (Precept Agreement ¶ 8 (Pls.' App. at 114)), and communications regarding

the acquisitions Plaintiffs claim were hidden from them (Letter from Doug Deason to Jim Gorin,

President of Infographix, Inc. (Dec. 12, 1997) (Pls.' App. at 121-26); Letter from Doug Deason

to J.D. Greco, CEO of MBF Corp. (March 4, 1998) (Pls.' App. at 133-37); Precept Unanimous

Written Consent Form (April 7, 1998) (Pls.' App. at 139-40)).  If Plaintiffs' contention is correct,

they were not on inquiry notice until November of 2002 and their claims were timely filed on

March 17, 2003, within three years of such discovery, and within the absolute five-year time bar.

In contrast, Defendants assert that Plaintiffs were put on inquiry notice over five years

before the filing of this suit.  (Defs.' Reply Mot. Summ. J. at 4-6.)  Defendants provide copies of

several SEC forms and filings they claim put Plaintiffs on inquiry notice of all potential claims in

1998.  Precept Investors, Inc., Notes to Consol. Fin. Stmts., Draft at 17 (Defs.' App. at 124); S-4

(Defs.' App. at 203, 207); S-4A (Defs.' App. at 245-47); Prospectus (Defs.' App. at 284, 287);

SEC Form 8-K for Infographix, Inc. ("Infographix 8-K") (Defs.' App. at 293-95); SEC Form 8-K

for MBF Corp. ("MBF 8-K") (Defs.' App. at 297-300.)  If the SEC forms and communications

between the parties disclosed to Plaintiffs enough information that, in 1998, they knew or should

have known through reasonable diligence the facts giving rise to their claims, the claims would

be time-barred under the three-year statute of limitations.

The SEC forms contain the basic relevant facts for each transaction involving the Toys.

The S-4, the S-4A, and the Prospectus filed by Defendants in December of 1997 disclosed: (1)

the sale of the Ranch to Defendants, including the price paid for the Ranch, the lease back of the

Ranch to Precept, and the amount of the monthly rental payment; S-4A (Defs.' App. at 247);

Prospectus (Defs.' App. at 286-87); (2) the sale of the Condo to Darwin Deason, the sale price of

the Condo, and the lease back agreement; S-4 (Defs.' App. at 206); S-4A (Defs.' App. at 248);

Prospectus (Defs.' App. at 287); (3) the sale of the Luxury Box to the Defendants, the sale price,

and the lease back agreement; S-4 (Defs.' App. at 206); S-4A (Defs.' App. at 247); Prospectus

(Defs.' App. at 287); (4) the sale agreement and sale price of the Palm Desert property; S-4

(Defs.' App. at 207); S-4A (Defs.' App. at 247); Prospectus (Defs.' App. at 287); and, (5) the

private placement of stock in Precept Builders, which was a subsidiary of Precept and wholly

owned by Darwin Deason. S-4 (Defs.' App. at 206); S-4A (Defs.' App. at 247); Prospectus

(Defs.' App. at 286.) In addition, Defendants made certain disclosures to Mr. Eric Bradshaw of

M.H. Meyerson & Co., who was hired by Plaintiffs to provide USTS with a fairness opinion. S-

4A (Defs.' App. at 231.) These disclosures included the $600,000 discount on the sale price of

the Condo and the forgiveness of the $2.3 million dollars in debt owed by Precept Builders in the

private placement of stock. Precept Investors, Inc., Notes to Consol. Fin. Stmts., Draft at 11,17

(Defs.' App. at 119, 124.)

Furthermore, although Plaintiffs claim they knew nothing of the acquisitions of

Infographix, Inc. and MBF/Mailsource Corp., the Defendants publicly disclosed these

acquisitions in SEC filings on April 28, 1998 and June 19, 1998, respectively. Infographix 8-K

(Defs.' App. at 293-95); MBF 8-K (Defs.' App. at 297-300.) Finally, Defendants disclosed that

the executive officers of Precept, identified in the SEC filings as the Defendants, received

personal benefits of the lesser of $50,000 or 10% of their salary and bonus. S-4 (Defs.' App. at

203); S-4A (Defs.' App. at 245-46); Prospectus (Defs.' App. at 284.)

Despite these disclosures almost five years prior to filing their claim, Plaintiffs present no evidence of any further inquiry into any transactions involving the Toys, the publicly filed acquisitions, or the compensation amounts provided to Precept's executive officers. The standard for inquiry notice is that of a reasonable person, who must diligently investigate upon knowledge of any facts that could indicate fraud. Plaintiffs present no evidence that Margolies conducted such an investigation. Hence, Plaintiffs are imputed with any knowledge of the alleged fraud that could have been discovered through such diligent investigation.

Margolies claims that Defendants "took the Toys out of the Company and then charged the Company back." (Pls.' Br. at 10.) Margolies knew or should have known through the public SEC filings that many of the Toys were being sold to the Defendants and leased back to the company, yet has failed to provide any evidence that he investigated these possibly self-serving transactions. In fact, although Plaintiffs allege otherwise, in Margolies' deposition, he states at various times that he was not aware of the fair market value of several of the Toys or if the Toys were actually used for legitimate business purposes. (Defs.' App. at 15-17, 30.)

Additionally, Plaintiffs concede that Margolies learned of the acquisition involving Infographix in a press release in April 1998. (Pls.' Br. at 9.) Yet, even with actual knowledge in 1998 of this acquisition that took place allegedly without Plaintiffs' knowledge and in violation of the March 7, 1997 Letter of Intent between USTS and Precept, *see* Letter from Neely to Margolies ¶ 8 (Pls.' App. at 114),--facts that would incite a reasonable person to diligently investigate into the possibility of fraud--Margolies has failed to present any evidence of such

3:03-CV-0572-P
**Order GRANTING Defendants' Motion for Summary Judgment**
**Page 23 of 25**

inquiry or investigation. Although Plaintiffs may not have had actual knowledge of the specific alleged fraudulent conduct by Defendants, the mere assertion that they did not have knowledge of such conduct until the bankruptcy filing in 2002, unsupported by any evidence that Margolies conducted reasonable and diligent investigation into the transactions involved in the alleged fraudulent conduct, is not enough to defeat summary judgment. Even if Defendants concealed certain fraudulent acts, the law makes it clear that Margolies still had a duty to exercise reasonable diligence to discover such acts.

The Court finds that a reasonable jury could not find that Plaintiffs were not on inquiry notice of Defendants' alleged fraudulent conduct until the bankruptcy filing in November 2002. Because Plaintiffs have not presented a triable issue of fact, the Court finds that Plaintiffs were on inquiry notice to the facts giving rise to their claims by the date of the SEC filings regarding the Toys, the acquisitions, and the payment of personal expenses, the last of which was filed on February 17, 1998. As such, the Court applies the three-year statute of limitations, and Plaintiffs' claims under the Texas Blue Sky Laws filed March 17, 2003 are time-barred as a matter of law.

Therefore, the Court GRANTS summary judgment as to the claims filed pursuant to the Texas Blue Sky Laws.

## IV.   Common Law Fraud

For a common law fraud claim, the statute of limitations is four years from the day the cause of action accrues. Tex. Civ. Prac. & Rem. Code Ann. § 16.004 (Vernon 2005). The statute of limitations for fraud is subject to equitable tolling. *TRW Inc. v. Andrews*, 534 U.S. 19, 27 (2001). The statute of limitations does not begin to run until the fraud is discovered, or

should have been discovered, by the plaintiffs. *Id.*

As previously discussed, Plaintiffs, with the exercise of reasonable diligence, should have discovered the facts giving rise to their claims within a reasonable time after February of 1998. Thus, the applicable four-year statute of limitations has run well before Plaintiffs filed their Complaint in March of 2003 and the claims are time-barred as a matter of law.

Thus, the Court GRANTS summary judgment as to Plaintiffs' common law fraud claims.

## V.     Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is hereby GRANTED.

**IT IS SO ORDERED.**

Signed this 20 th day of June 2005.

JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE